UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HECTOR W. BIAGGI-PACHECO,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF PLAINFIELD,<br>PLAINFIELD CITY POLICE<br>DEPARTMENT, UNION COUNTY,<br>STATE OF NEW JERSEY, ET AL.<br><br>Defendants. | Civ. No. 16-3511 (KM) (JBC)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

The plaintiff, Hector Biaggi-Pacheco, alleges that the defendants wrongfully arrested, charged, and detained him. Most relevant here is his claim that, despite the dismissal of the charges against him, he was held in Union County jail for six more days until finally he was released. In a January 30, 2017 Memorandum and Order (ECF No. 10), I dismissed certain claims directed against the State of New Jersey and granted the plaintiff leave to amend his complaint. He has done so, and the currently operative pleading is the (First) Amended Complaint (ECF No. 11, cited as 1AC and referred to herein as the "Complaint"). Now before the Court are two motions under Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint for failure to state a claim: one filed by the State of New Jersey and Union County Prosecutor's Office ("UCPO") (ECF No. 18), and one filed by Union County (ECF No. 24).

For the reasons stated herein, I will grant the motions in part and deny them in part. What emerges is essentially a two-part case, comprising (a)

1

claims against the City of Plainfield[1] arising from events in connection with the arrest, and (b) claims against UCPO and the County, arising from the prolongation of the plaintiff's detention after his charges were dismissed.

## I. Background[2]

The allegations of the Amended Complaint are broadly similar to those of the original Complaint. (ECF No. 1) Because there are some revisions, I again review them. They are assumed to be true for purposes of this motion only.

Mr. Biaggi-Pacheco is a resident of Plainfield, New Jersey, which is in Union County. (1AC at 4, ¶ 1 ["The Parties"].)[3] While conducting a sweep and mass arrest, police arrested Mr. Biaggi-Pacheco and charged him with a drug offense. (*Id.* at 6, ¶ 2.) Starting on December 5, 2014, he was incarcerated in the Union County Jail. (*Id.* at 7, ¶ 3.) He maintained his innocence during that period. (*Id.* at 7, ¶ 4.) On January 16, 2015, the charges against him were

---

[1] The City of Plainfield filed an Answer (ECF No. 12) to the Amended Complaint and is not a participant in these motions.

[2] Record items cited repeatedly will be abbreviated as follows:

| | |
|---|---|
| "M&O" = | Memorandum and Order (ECF No. 10) |
| "1AC" = | Amended Complaint with Exhibits (ECF No. 11) |
| "NJ Br." = | Brief in Support of the Motion to Dismiss the Amended Complaint of Plaintiff, Hector Biaggi-Pacheco, by Defendants, State of New Jersey and Union County Prosecutor's Office and Employees (ECF No. 18) |
| "Pl. Br." = | Plaintiff's Brief in Opposition to State of New Jersey and Union County Prosecutor's Office and Employees Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 23) |
| "UC Br." = | Defendant County of Union's Brief in Support of the Motion to Dismiss (ECF No. 24) |
| "UC Reply" = | Reply Brief of Defendant, County of Union, in Support of the Motion to Dismiss (ECF No. 27) |

[3] The paragraph numbering starts over at paragraph 1 in each section of the Amended Complaint. Citations to the Amended Complaint will therefore contain the page number where the citation occurs, in addition to the paragraph number. Where necessary, the section header is identified as well.

2

administratively terminated. (*Id.*) However, he was not released until January 22, 2016. (*Id.* at 7, ¶ 5.)

The Complaint asserts seven causes of action:

Count I: Wrongful Arrest and Malicious Prosecution (42 U.S.C. 1983)

Count II: Wrongful Imprisonment

Count III: Malicious Prosecution

Count IV: Intentional Infliction of Emotional Distress

Count V: Abuse of Process

Count VI: Negligence

Count VII: New Jersey Civil Rights Act

(*Id.* at 11–22.) The Complaint seeks compensatory damages, as well as attorneys' fees and costs of suit.

## II. Standard of Review

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. When deciding such a motion, all allegations in the complaint are taken as true and viewed in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (noting that the "reasonable inferences" principle was not undermined by *Twombly, infra*).

While Fed. R. Civ. P. 8(a) does not require a complaint to contain detailed factual allegations, the obligations of a plaintiff to provide the grounds of his entitlement to relief requires more than labels and conclusions; the formulaic recitation of the elements of a cause of action won't do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

3

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678 (2009).

In *Bistrian v. Levi*, the Third Circuit outlined a three-step process for analyzing a Rule 12(b)(6) motion to dismiss. 696 F.3d 352, 365 (3d Cir. 2012). (1) The court outlines the elements a plaintiff must plead to state a claim for relief; (2) it then "peel[s] away" allegations that are no more than conclusions; (3) finally, it looks for well-pled factual allegations, assumes their veracity, and determines whether they plausibly giver rise to an entitlement to relief. *Id.* (noting further that the last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense") (citations omitted). *Accord Carpenters Health & Welfare Fund of Phila. v. Mgmt. Res. Sys., Inc.*, 837 F.3d 378, 382 (3d Cir. 2016) (citing *Bistrian*).

### III. Analysis

Section III.A, *infra*, briefly discusses the differences between the original and amended Complaints. Section III.B, *infra*, analyzes all seven counts of the First Amended Complaint as asserted against the State. Section III.C, *infra*, analyzes all seven counts as asserted against the County and UCPO.

#### A. Original and Amended Complaints

The original complaint in this action was confusing as to facts and format, and contained at least one obvious error as to dates. In the previous Memorandum and Order, I dismissed that complaint. This opinion should be read in the context of that prior Opinion, which is incorporated by reference here.

My prior Opinion clearly identified the defects of the complaint and explicitly instructed the plaintiff as to what an amended complaint should contain:

> A second fundamental flaw is that the Complaint simply contains no facts concerning what the County, acting through individual prosecutors, is alleged to have done. The complaint does not even

4

> state specifically what the charges against Mr. Biaggi-Pacheco were, who filed them, and in what form. Some minimal specificity, as required by the federal rules, is needed. The problem is exacerbated by group pleading against all defendants, jointly and severally. The plaintiff may be alleging, for example, that UCPO filed unfounded charges; he may be alleging only that UCPO negligently caused him to be held after charges were dismissed....
>
> In particular, the amended complaint must describe, in chronological order, the events that occurred, the persons and entities involved, and the particular acts they are individually alleged to have performed.

(M&O 7–8)

The plaintiff's efforts to comply have been minimal. The Complaint, as amended, is a modest improvement. The Complaint does revise some of the chronology (*e.g.*, 1AC 7, ¶¶ 3–5 (amending the date of arrest and release)), and it provides additional detail as to some of the events. The group-pleading problem remains. Still missing are such basic facts as the particular offense or offenses with which the plaintiff was charged, and the manner in which the charges were brought (*e.g.*, by complaint or indictment). The reader still cannot really tell what the involvement of UCPO or the County is alleged to be. Despite these deficiencies, for the reasons stated herein I will permit the plaintiff to explore in discovery the extent to which the County or UCPO caused him to be held after charges were dismissed. Nevertheless, certain claims still fall short as a matter of law or lack the necessary factual support to meet the *Twombly* plausibility standard, and they will be dismissed.

### B. The State

I first consider the viability of all counts of the First Amended Complaint as to the State of New Jersey. Counts I and VII arise under the federal and State constitutions. The remaining counts, Counts II, III, IV, V, and VI, are all state-law tort claims.

#### 1. Counts I and VII

Counts I and VII of the original complaint were dismissed as against the State, because the State is not a "person" amenable to suit under 42 U.S.C.

5

1983 or NJCRA. (*See* M&O 5–6, citing, *e.g.*, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64–66, 109 S. Ct. 2304, 2308–10 (1989); *Endl v. New Jersey*, 5 F. Supp. 3d 689, 697 (D.N.J. 2014).) Count I (1AC 11 ("Wrongful Arrest and Malicious Prosecution" (42 U.S.C. § 1983)) and Count VII (1AC 22 (NJ Civil Rights Act ("NJCRA")) are dismissed for the same reason.

### 2. Counts II and VI

I next consider Counts II and VI, which allege that the State is liable in tort for the detention of Mr. Biaggi-Pacheco for six days after the charges against him were dismissed. "A public entity [here, the State] is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." N.J. Stat. Ann. § 59:2-2(a). As to these claims, however, no action by any State employee is alleged. Rather, the Complaint alleges generally that the State possessed authority over the UCPO or the County. That in itself is not sufficient to impose vicarious liability on the State. Something more specific is required—for example, a demonstration that UCPO personnel were acting as "public employees" of the State for purposes of the NJTCA. *See* N.J. Stat. Ann. § § 59:1-3 (defining public employee).

County employees, of course, are just that. UCPO employees occupy a hybrid status: they are deemed to act for the State when pursuing core law enforcement functions, but for the County when discharging their administrative duties. That principle has been recognized in the context of the State's Eleventh Amendment sovereign immunity. *See Coleman v. Kaye*, 87 F.3d 1491, 1499 (3d Cir. 1996) (County Prosecutor partakes of State's immunity only when acting in prosecutorial, as opposed to administrative, capacity); *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850 (3d Cir. 2014). More important here is that the same distinction has been recognized as a matter of State law. Thus, "[w]hen county prosecutors and their subordinates act in their law enforcement/investigatory capacity, they act as 'agents' and 'officers' of the State, qualifying as State employees under [NJTCA]

6

for the purpose of determining vicarious liability . . . ." *Wright v. State*, 169 N.J. 422, 452 (2001). It follows that when employees of the County prosecutor do *not* act in that core law enforcement capacity, they act as administrators, and are considered agents of the County, not of the State.

Biaggi-Pacheco concedes that, in relation to the County and the UCPO, he is alleging an "administrative failure." (*See* Pl. Brf. 6–7.) Arranging for the release of prisoners when charges are dropped, he says, is not intimately bound up with the core prosecutorial functions of charging and trying criminal cases; it is a nondiscretionary, administrative function—a matter of paperwork. As to such administrative functions, the UCPO is not acting as an arm of the State, but as an arm of County government. (That would of course be true *a fortiori* in relation to any actual County employees involved in the process.)

Biaggi-Pacheco's reason for structuring the allegations in this way is not hard to find. To the extent UCPO is an arm of the State, then it, like the State, would not be a "person" amenable to suit under either 1983 or the NJCRA. (*See* Section III.B.1, *supra*; M&O 5–6.) As an arm of the County, however, UCPO is amenable to suit under 1983 and the NJCRA.

Biaggi-Pacheco must take the bitter with the sweet. By conceding that these claims involve matters of local administration, he has undermined his argument that liability flows to the State; with respect to the claims in Counts II and VI, these defendants are County, not State, actors. Counts II and VI do not contain any factual allegations that anyone involved was a State employee or agent. They are therefore dismissed as against the State.

### 3. Counts III, IV, and V

Counts III, IV, and V allege the intentional torts of malicious prosecution, intentional infliction of emotional distress ("IIED"), and abuse of process. The State asserts its immunity from vicarious liability for intentional torts under the NJTCA, N.J. Stat. Ann. § 59:2-10.

For purposes of vicarious liability, intentional torts were traditionally presumed to be outside the legitimate scope of employment. That principle is

7

enshrined in Section 59:2-10, which provides that "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." *Id.* The New Jersey courts have authoritatively construed that provision to mean that "there can be no vicarious liability by a public entity for intentional torts committed by its employees; that is, with respect to such intentional torts, the theory of respondeat superior does not apply." *Hoag v. Brown*, 397 N.J. Super. 34, 54, 935 A.2d 1218, 1230 (App. Div. 2007) (citing *McDonough v. Jorda*, 214 N.J. Super. 338, 350, 519 A.2d 874 (App. Div. 1986)). *See Jutrowski v. Twp. of Riverdale*, No. CV 13-7351, 2017 WL 1395484, at *6 (D.N.J. Apr. 17, 2017) (§ 59:2-10 bars vicarious liability of State and City for assault by police); *Grieco v. Lanigan*, No. CV 15-7881 (FLW), 2017 WL 384689, at *4 (D.N.J. Jan. 27, 2017) (§ 59:2-10 bars vicarious municipal liability for assault); *Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 767 (D.N.J. 2016) (§ 59:2-10 bars vicarious municipal liability for assault and battery, false arrest).

Counts III, IV, and V allege malicious prosecution, IIED, and abuse of process—all intentional torts. Section 59:2-10 dictates that the State cannot be held vicariously liable for them. *See Joyce v. City of Sea Isle City*, No. CIV. 04-5345RBK, 2008 WL 906266, at *24 (D.N.J. Mar. 31, 2008), *on reconsideration in part*, 2008 WL 2875456 (D.N.J. July 23, 2008) (Under § 59:2-10, City "cannot be liable for intentional torts committed by its employees, and this Court will dismiss Plaintiff's malicious prosecution claim"); *Ward v. Barnes*, 545 F. Supp. 2d 400, 420–21 (D.N.J. 2008) (Under § 59:2-10 "there is no legal basis for permitting respondeat superior liability to public entities on the theories of battery and intentional infliction of emotional distress, which are acts that require 'actual malicious or willful misconduct.'"); *Sheppard v. Sheriff*, No. 11-2398 (NLH), 2016 WL 3912845, at *8 (D.N.J. July 19, 2016) (Under § 59:2-10, "state law claims for abuse of process . . . against the County will be dismissed with prejudice"); *Stolinski v. Pennypacker*, No. CIV 07-3174(JBS), 2008 WL 5136945, at *6 (D.N.J. Dec. 4, 2008), *on reconsideration in part*, 2009

8

WL 1651168 (D.N.J. June 11, 2009) (Under § 59:2-10, the State and the State Police Office of Professional Standards are immune from "malicious prosecution and malicious abuse of process claims").

Counts III, IV, and V are therefore dismissed as against the State.

In sum, then, all claims against the State are dismissed. The remainder of this opinion concerns the two remaining defendants, the County and UCPO.

### C. The County and UCPO

#### 1. Count I (§ 1983) and Count VII (NJCRA)

As to the County and UCPO, Counts I and VII fail to allege any wrongdoing in connection with the initial arrest and charges; as to these events, the relevant actors would seem to be the City of Plainfield and its police officers. (*Id.* 6, ¶ 2.)[4] Plaintiff's detention for six days after the charges were dismissed, however, plausibly suggests a federal constitutional claim of deprivation of liberty without due process. (*See id.* 12 ¶ 2(d).) Count VII is pled in conclusory terms, but it incorporates earlier factual allegations, and I interpret it as a parallel claim under the State Constitution.

Under either theory, it is plausible that any alleged misconduct surrounding the plaintiff's release date—assuming it occurred—is attributable to agents of the County or UCPO. *See* Section III.C.2, *infra.*

The motion to dismiss Counts I and VII as to the County and UCPO is therefore denied.

#### 2. Counts II and VI

As against the County and USPO, the plaintiff's central grievance is the alleged prolongation of Mr. Biaggi-Pacheco's incarceration for six days after the

---

[4] To be clear, this goes beyond the failure to allege *Monell* liability, *i.e.*, a government entity's vicarious responsibility for the actions of its employees, which might be shown by inadequate training or a pattern or policy of constitutional violations. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018 (1978); *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013). There is simply no allegation that the County, the UCPO, or their employees had *any* connection to the arrest, which was effected by the Plainfield police.

9

charges against him were dismissed. That is the subject of Counts II and VI (wrongful imprisonment, negligence).

The County and USPO argue primarily that the allegations are too vague; the Complaint does not specify how this error occurred or who committed it. I do not imply that vagueness in a complaint should be rewarded, but these are matters which, if true, would plausibly have involved County or USPO personnel. Mr. Biaggi-Pacheco argues with some force that, through no fault of his own he is not yet in a position to be more specific. He expects to obtain the necessary information through discovery. He alleges plausibly on information and belief that there is an administrative process in place with respect to the release of prisoners when charges are dropped. (1AC at 8–9, ¶¶ 8–10) He speculates that the delay in his release could have resulted from the negligent error of a "low level administrator," but frankly acknowledges that he does not know. (See Pl. Br. 10.) He has been unable to discover any official reports relating to the reasons for his continued detention. (See 1AC at 2 ¶¶ 4, 5.) What occurred, then, is essentially a black box from Mr. Biaggi-Pacheco's perspective.

I accept that the plaintiff, even after reasonable pre-suit inquiry, may not be able to ascertain the precise mechanics by which the County or the UCPO failed to accomplish his timely release. I therefore will permit these claims to go forward to discovery regarding the identities of the individuals putatively responsible, their relationships and roles within UCPO and the County, the manner in which this alleged delay in the plaintiff's release date occurred, and whether any alleged misconduct was negligent or intentional.[5]

The motion of the County and UCPO to dismiss Counts II and VI is therefore denied.

---

[5] Once these facts are explored, the court will be in a better position to address any qualified immunity issues on summary judgment. At present, there is not an adequate basis.

10

### 3. Count III (Malicious Prosecution)

Count III (1AC 16 ("Malicious Prosecution")) lacks the requisite factual allegations to survive a motion to dismiss.

Malicious prosecution under New Jersey law requires the plaintiff to prove: (1) that the criminal action was instituted by the defendant against the plaintiff; (2) that it was actuated by malice; (3) that there was an absence of probable cause for the proceeding; and (4) that it was terminated favorably to the plaintiff. *Brunson v. Affinity Fed. Credit Union*, 199 N.J. 381, 393–94 (N.J. 2009) (citing *Helmy v. City of Jersey City*, 178 N.J. 183, 190 (2003)). Failure to establish any of the elements means that the claim must fail. *Id.*

Missing, at least as to the County and UCPO, is any factual allegation of the element of "malice," traditionally defined as "the intentional doing of a wrongful act without just cause or excuse." *Brunson*, 199 N.J. at 395 (quoting *McFadden v. Lane*, 71 N.J.L. 624, 630, 60 A. 365 (E. & A.1905)). Malice is an independent element, requiring something above and beyond mere lack of probable cause, although the absence of probable cause is highly probative. *Brunson*, 199 N.J. at 396. Thus some cases have announced, as a requirement, that a case of malicious prosecution contain extrinsic evidence of malice. *Id.*; *see also LoBiondo v. Schwartz*, 199 N.J. 62, 94 (2009) ("[I]f the only evidence of lack of a probable cause was the inference derived from favorable termination of prior suit, some extrinsic evidence of malice will be required.").

The Complaint asserts the bare legal conclusion that the County and UCPO acted maliciously. It contains no allegation, however, that *these* defendants (as opposed to, say, the Plainfield police) acted in the absence of probable cause, or knew probable cause was lacking. The Complaint alleges that "the charges brought *by police officers of the City of Plainfield* . . . lacked sufficient evidence ...." (1AC 2 ¶1; *emphasis* added) The only thing the County or UCPO allegedly did in relation to these charges was dismiss them.[6] Nor does

---

6    Despite specific instructions from the Court (M&O 7–8), the First Amended Complaint does not state specifically what the charges were, or how or by whom they

11

the Complaint allege that the County or UCPO had some ulterior, bad-faith motive for prosecuting Mr. Biaggi-Pacheco. Indeed, the Complaint does not contain any extrinsic facts that could support an inference of malice on the part of these defendants. It does contain a series of fact-free allegations of "a system of conducting arrests," "wrongful and malicious prosecutions," and "fail[ures] to properly train . . . employees." (1AC 17, ¶ 4.) These conclusory allegations fall short of the *Twombly* standard of factuality.

Count III will therefore be dismissed as against the County and UCPO.[7]

### 4. Count IV (IIED)

Count IV (1AC 18 (IIED)), must be dismissed as to the County and UCPO.

Under New Jersey law, to make out a prima facie case of IIED, a plaintiff must show that: (1) the defendant acted intentionally; (2) defendant's conduct was so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community; (3) that the conduct proximately caused the plaintiff emotional distress; and (4) the emotional distress was so severe that no reasonable person could be expected to endure it. *Segal v. Lynch*, 413 N.J. Super. 171, 191 (App. Div. 2010) (quoting *Buckley v. Trenton Saving Fund. Soc.*, 111 N.J. 355, 366 (1988)). Crucially, the Complaint fails to allege any conduct or action on the part of the County or UCPO that would meet the "outrageous" and "extreme" standard of the second element. *See, e.g., Shabazz-Henry v. City of Newark*, No. L-5471-12, 2016 WL 6156206, at *9 (App. Div. Oct. 24, 2016) (denying an IIED claim where defendants merely forgot to remove a warrant from the system).[8] The "severe emotional distress"

---

were actually brought. It may be that that Mr. Biaggi-Pacheco was not indicted, but the reader is left to guess.

7      These would also be alternative grounds to dismiss Count III as against the State.

8      Perhaps the lowest threshold for such outrageous conduct was set by *Leang v. Jersey City of Bd. of Educ.*, 198 N.J. 557, 587–88 (N.J. 2009). *Leang* found it sufficient

contemplated by the fourth element requires more—*e.g.,* "a dramatic impact on a plaintiff's everyday activities or ability to function [evidenced by] . . . regular psychiatric counseling." *Shabazz-Henry*, 2016 WL 6156206, at *9 (citing *Turner v. Wong*, 363 N.J. Super. 186, 200 (App. Div. 2003) (denying a claim for intentional infliction of emotional distress where there was no demonstration that she suffered severe emotional distress)).

The Complaint alleges that Mr. Biaggi-Pacheco was arrested on December 5, 2015; evidently he did not make bail, and remained in custody through the date his charges were dismissed, alleged to be Saturday, January 16, 2016. He was not released immediately, but was allegedly held until Friday, January 22, 2016. No facts are alleged to suggest that this lag was so incrementally distressing as to cross the line to severe psychological harm. On either element two or element four, then, the IIED claim fails.

Count IV will be dismissed as against the County and UCPO.[9]

### 5. Count V (Abuse of Process)

Count V (1AC 19 ("Abuse of Process")) must also be dismissed as to the County and UCPO.

The New Jersey Supreme Court has identified malicious abuse of process[10] as part of "a group of closely related torts that, although ancient in origins, are treated with great caution because of their capacity to chill resort to [the] courts by persons who believe that they have a criminal complaint or civil claim against another." *LoBiondo v. Schwartz*, 199 N.J. 62, 80 (2009). It

---

that school officials intentionally arranged for plaintiff, a schoolteacher, to be accused of uttering a threat against her students, and taken from her classroom and arrested in a "public and notorious" manner. The authorities were allegedly aware that this plaintiff was particularly vulnerable to distress as a Cambodian Buddhist and believer in nonviolence, as well as a former victim of government oppression at the hands of the Khmer Rouge. No such special circumstances are alleged here.

9   These would also be alternative grounds to dismiss Count IV as against the State.

10   In New Jersey, the tort is properly referred to as "malicious abuse of process." *See LoBiondo*, 199 N.J. at 89.

requires that (1) the defendant made an improper, illegal, and perverted use of the process (i.e., a use neither warranted nor authorized by the process) and (2) that there was an ulterior motive in use of such a process. *Mandelbaum v. Arseneault*, 2017 WL 4287837, at *5 (N.J. App. Div. Sept. 28, 2017) (quoting *Ash v. Cohn*, 119 N.J.L. 54, 58 (E. & A. 1937)). Importantly, "[t]he tort of malicious abuse of process lies not for commencing an improper action, but for misusing or misapplying process *after it is issued*." *Hoffman v. Asseenontv.com, Inc.*, 404 N.J. Super. 415, 431 (App. Div. 2009) (emphasis added). In other words, the tort flows from "the misuse or 'misapplying [of] process justified in itself for an end other than that which it was designed to accomplish." *Baglini v. Lauletta*, 338 N.J. Super. 282, 293 (App. Div. 2001) (quoting *Prosser & Keeton on Torts* § 121 at 187 (5th ed. 1984)) ("The purpose for which the process is used, *once it is issued*, is the only thing of importance.").

Among the forms of process that can be abused are those attendant on criminal prosecution and arrest. *See Baglini*, 338 N.J. Super. at 294 (also listing attachment, execution, garnishment, sequestration proceedings, and subpoenas in aid of collection of a debt). Regardless of its nature, however, process is not abused unless "after its issuance the defendant reveals an ulterior purpose he had in securing it by committing further acts whereby he demonstrably uses the process as a means to coerce or oppress the plaintiff." *Tedards v. Auty*, 232 N.J. Super. 541, 550 (App. Div. 1989).

The Complaint alleges that the plaintiff should never have been charged criminally. It does not allege any act taken by the County or UCPO by which, *e.g.*, the arrest warrant or the Indictment were *then* diverted to an improper, collateral purpose. Nowhere in the timeline of events as described in the Complaint does Mr. Biaggi-Pacheco allege any legal steps or actions were taken against him between the date of the charge and the date it was dismissed.[11] On this basis alone the claim fails.

---

11    Indeed, it seems that the case against Mr. Biaggi-Pacheco was dismissed reasonably promptly. The key factual contention, repeated in both the Complaint and

14

Count V is therefore dismissed as against the County and UCPO.[12]

## IV. Conclusion

For the reasons stated above, the motions to dismiss the Amended Complaint filed by the State, the County, and UCPO, pursuant to Fed. R. Civ. P. 12(b)(6), are GRANTED IN PART AND DENIED IN PART, as follows:

(1) As to the State, the motion to dismiss all counts is GRANTED.

(2) As to the County and UCPO, the motions to dismiss Count I (42 U.S.C. § 1983), Count II (wrongful imprisonment), Count VI (negligence), and Count VII (NJCRA) are DENIED.

(3) As to the County and UCPO, the motions to dismiss Count III (malicious prosecution), Count IV (intentional infliction of emotional distress) and Count V (abuse of process) are GRANTED.

The plaintiff has had two opportunities to formulate his claims, the second with the benefit of explicit and detailed instructions from the Court. Accordingly, these dismissals are with prejudice.

An appropriate Order is filed herewith.

Dated: October 13, 2017

Kevin McNulty
United States District Judge

---

the briefs, is that an administrative error occurred by which the County or UCPO delayed his release from custody after the prosecution was dropped. (See e.g., 1AC 9–10, ¶¶ 9–11; Pl. Br. 5.)

[12] These would also be alternative grounds to dismiss Count V as against the State.