**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **HECTOR W. BIAGGI-PACHECO,**<br><br>          **Plaintiff,**<br><br>**v.**<br><br>**THE CITY OF PLAINFIELD, PLAINFIELD CITY POLICE DEPARTMENT, UNION COUNTY, STATE OF NEW JERSEY, ET AL.,**<br><br>          **Defendants.** | Civ. No. 16-3511 (KM)(JBC)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Hector Biaggi-Pacheco filed this action against the City of Plainfield, Plainfield City Police Department, Union County, Union County Prosecutor's office, State of New Jersey, in New Jersey Superior Court, Union County. Defendants removed this case pursuant to 28 U.S.C. § 1441. (DE 1). Police Officer Michael Metz was later added as a defendant. This court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over pendent state law claims under 28 U.S.C. § 1367. On motions (DE 30, 62) I dismissed all claims against defendants State of New Jersey and Michael Metz, and some of the claims against defendants Union County and Union County Prosecutor's Office ("UCPO", together with Union County, the "Union County Defendants"). Defendant City of Plainfield has been dismissed from the matter with prejudice pursuant to a stipulation of settlement. (DE 66, 57.) Now before the Court is the Union County Defendants' motion for summary judgment. (DE 69) Plaintiff

1

has filed a brief in opposition. (DE 71). Defendants have not filed a reply in opposition to the Plaintiff's brief or a counterstatement of material facts.[1]

For the reasons set forth below I will grant the Union County Defendants' motion for summary judgment.

## I.    Facts[2]

Plaintiff, Mr. Biaggi-Pacheco is a resident of Plainfield, New Jersey. On December 4, 2014, Mr. Biaggi-Pacheco was arrested in Plainfield and charged with various narcotics related offenses. (DE 69-2, Ex. A.) On December 5,

---

[1]    New Jersey Local Civil Rule 56.1 allows an opponent of a motion for summary judgment to

> furnish a supplemental statement of disputed material facts, in separately numbered paragraphs, citing to the affidavits and other documents submitted in connection with the motion, if necessary to substantiate the factual basis for the opposition. The movant shall respond to any such supplemental statement of disputed material facts as above, with its reply papers.

L.Civ.R. 56.1. Plaintiff included a Counterstatement of Material Facts as part of his Opposition Brief. Local Rule 56.1 requires that "each statement of material facts shall be a separate document (not part of a brief) and shall not contain legal arguments or conclusions of law." Both Plaintiff and Defendants failed to comply with this rule, and incorporated their statements of material facts a sections within their briefs. Plaintiff's responsive statement of material facts also includes legal arguments and conclusions of law. Although non-compliance with L.Civ.R. 56.1 may warrant dismissal of the motion, I have decided to disregard any legal arguments or conclusions of law and have only taken into account facts that are either undisputed or are supported by the exhibits appended to the motions. *See Veverka v. Royal Caribbean Cruises, Ltd.*, No. CIV.A. 12-3070 ES MA, 2015 WL 1270139, at *1 n.1  (D.N.J. Mar. 18, 2015), aff'd, 649 F. App'x 162 (3d Cir. 2016) ("the Court will 'disregard all factual and legal arguments, opinions and any other portions of the 56.1 Statement which extend beyond statements of facts.'" (quoting *Globespanvirata, Inc. v. Texas Instruments, Inc*, No. CIV. 03-2854GEB, 2005 WL 3077915, at *2 (D.N.J. Nov. 15, 2005))).

[2]    For ease of reference, certain key items from the record will be abbreviated as follows:

| | | |
|---|---|---|
| "2AC" | = | Second Amended Complaint [ECF no. 40] |
| "Motion Brief" | = | Union County and UCPO's Brief in Support of their Motion for Summary Judgment [ECF no. 69] |
| "Opposition Brief" | = | Plaintiff's Opposition Brief in response to Defendants' Motion for Summary Judgment [ECF no. 71] |

2014, bail was set in the amount of $35,000, which was reviewed and continued at that amount on December 10, 2014. (*Id*; see also *id*., Ex. B.)

Biaggi-Pacheco's co-defendant Moises Monroig-Rosado, having been accepted into a Pre-Trial Intervention ("PTI") program, gave a statement exculpating Plaintiff. (*Id.*, Ex. E.)

On Friday, January 16, 2015, the prosecutor decided that the charges against Mr. Biaggi-Pacheco should be administratively dismissed. The prosecutor filled out a form titled "Report of the Prosecutor." That form, which is circulated to the assignment judge, states the basis for the dismissal of charges against an individual. It is required to be delivered to the Judge "within 5 days of the administrative dismissal." (*Id.*) In this case, the Report is dated Saturday, January 17, 2015. (*Id.*) Plaintiff was released from jail on Thursday, January 22, 2015, six days after the charges against him were administratively dismissed. (*Id.*, Ex. F.) The six-day time period included a three-day court holiday due to the Dr. Martin Luther King, Jr. observance, which occurred on January 19, 2015. (*Id.*, Ex. G.)

Plaintiff alleges in his 2AC that Defendants wrongfully arrested, charged, and detained him. Most notably, he contends that after the prosecutor's administrative dismissal of charges against him, he was held for another six days, in violation of his federal and state constitutional rights. As stated in more detail in Part II, *supra*, the only remaining claims against the Union County Defendants are his 42 U.S.C. § 1983 claim (Count I) and New Jersey Civil Rights Act claim (Count VII) alleging that Plaintiff's due process rights were violated due to a UCPO policy that gives prosecutors five days to provide requisite paperwork to the court to effect the release of an incarcerated individual from jail.

## II.   Procedural History

Plaintiff first filed this action in the Superior Court of New Jersey on May 19, 2016. (DE 1 at 8.) The case was removed to this Court on June 16, 2016. (*Id.* at 1.) Defendants filed a motion to dismiss the original complaint (DE 3),

3

which I granted in part and denied in part, without prejudice to amendment. (DE 10.) Plaintiff then filed his First Amended Complaint ("1AC", DE 11), which certain defendants again moved to dismiss. (DE 18, 24.) In my opinion on that motion, I dismissed all counts against the State of New Jersey, as well as Count III (malicious prosecution), Count IV (intentional infliction of emotional distress), and Count V (abuse of process) against the Union County Defendants ("1AC Ruling"). (DE 29.) I allowed Count I (§ 1983) and Count VII (NJCRA) to proceed against the Union County Defendants. I ruled that the 1AC failed to allege *Monell* liability against the Union County Defendants regarding Plaintiff's arrest. However, I found that the complaint had plausibly suggested a federal constitutional claim of deprivation of liberty without due process with respect to his prolonged six-day detention.[3] *Biaggi-Pacheco v. City of Plainfield*, No. CV163511KMJBC, 2017 WL 4618751, at *5–6 (D.N.J. Oct. 13, 2017). I permitted the claims to go forward to discovery regarding the identities of the individuals responsible for Plaintiff's release, their relationships and roles within UCPO and the County, the manner in which the alleged delay in the plaintiff's release date occurred, and whether any alleged misconduct was negligent or intentional. *Id.*

On April 6, 2018, Plaintiff filed the 2AC, which is the current operative pleading. The 2AC is substantially similar to the 1AC, but adds Officer Michael Metz as a new defendant. The 2AC asserts seven causes of action:

Count I: Wrongful Arrest and Malicious Prosecution (42 U.S.C. § 1983);

Count II: Wrongful Imprisonment;

Count III: Malicious Prosecution;

Count IV: Intentional Infliction of Emotional Distress;

---

[3]    Although Plaintiff also asserts Fourth and Fifth Amendment violations against the Defendants in both his 1AC and 2AC, I found that Plaintiff had failed to allege that the Union County defendants or any of its employees had any connection to Plaintiff's arrest, which was effected by the Plainfield police. *Biaggi-Pacheco v. City of Plainfield*, No. CV163511KMJBC, 2017 WL 4618751, at *5 n.4 (D.N.J. Oct. 13, 2017). Plaintiff does not seem to dispute this finding in his Opposition Brief, which only raises a due process violation against the Union County Defendants in violation of 42 U.S.C. § 1983. (See Opposition Br. at 17.)

Count V: Abuse of Process;

Count VI: Negligence; and

Count VII: New Jersey Civil Rights Act.

The 2AC seeks compensatory damages, as well as attorneys' fees and costs of suit. Officer Metz filed a motion to dismiss, which I granted on statute of limitations grounds. ("2AC Ruling"). (DE 49, 61.) I noted in that ruling that Counts III, IV, and V were and would remain dismissed as against the Union County Defendants because those allegations remained unchanged from the 1AC. *Biaggi-Pacheco v. City of Plainfield*, No. CV163511KMJBC, 2019 WL 413543, at \*2 n.3 (D.N.J. Jan. 31, 2019).

Now before the court is the Union County Defendants' motion for summary judgment on the remaining counts: Counts I, II, VI, and VII of the 2AC. (DE 69.) That motion has been narrowed further. Plaintiff in his Opposition states that he does not oppose summary judgment on Count II (wrongful imprisonment) and Count VI (negligence). (DE 71 at 22). Thus, the only outstanding claims against the Union County Defendants are Count I (42 U.S.C. § 1983) and Count VII (New Jersey Civil Rights Act), asserted in relation to the six-day detention.

## III.   **Legal Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Delaware River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23. "[W]ith respect to

an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; see also Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist).

Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 111 L. Ed. 2d 695, 110 S. Ct. 3177 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."

*Anderson*, 477 U.S. at 247–48. A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## IV.    Discussion

In Counts I and VII of the 2AC, Plaintiff alleges violations of his federal rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, citing 42 U.S.C. § 1983, and violations of his state constitutional rights, citing the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6–1 *et seq.* ("NJCRA").[4]

"A plaintiff may be entitled to relief in the context of a Section 1983 claim if the complaint 'sufficiently alleges a deprivation of any right secured by the Constitution.'" *Graw v. Fantasky*, 68 F. App'x 378, 381 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)). Section 1983 does not create a substantive right but provides a remedy for the violation of rights created by federal law. 42 U.S.C. § 1983; *Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S. Ct. 2427, 2432 (1985). The NJCRA is a state law parallel to 42 U.S.C. § 1983; like § 1983, the NJCRA "provides a means of vindicating substantive rights guaranteed by federal law and New Jersey's Constitution and laws and is not a source of rights itself." *Lapolla v. Cty. of Union*, 449 N.J. Super. 288, 306, 157 A.3d 458, 469 (App. Div. 2017) (citing *Gormley v. Wood-El*, 218 N.J. 72, 98, 93 A.3d 344, 358 (2014)).[5] This District has interpreted the

---

[4] 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

[5] NJCRA provides:

NJCRA and Section 1983 as coextensive. *See Sharif v. City of Hackensack*, No. CV1712410KMMAH, 2018 WL 5619721, at *7 (D.N.J. Oct. 29, 2018) ("This District has uniformly interpreted the NJCRA in parallel with Section 1983 and read the two as coextensive." (citing *Castillo-Perez v. City of Elizabeth*, No. 11-6958, 2014 WL 1614845, at *9 (D.N.J. Apr. 21, 2014); *Estate of Lydia Joy Perry ex rel Kale v. Sloan*, No. 10-4646, 2011 WL 2148813, at *2 (D.N.J. May 31, 2011) (collecting cases))).

A prima facie case under § 1983 requires a plaintiff to demonstrate that (1) a person deprived him or her of a federal right; and (2) that person acted under color of state law. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 1923 (1980)).

### a. *Monell* policy-based liability

Special liability rules apply to constitutional claims against municipalities and local governments. Such entities cannot be held liable for their employees' acts on a respondeat superior theory, but may be liable when a constitutional injury results from a municipal policy or custom. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."); *see also Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996). The "official policy" requirement in *Monell* "was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which

---

Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

the municipality is actually responsible," which are those that the municipality "has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80, 106 S. Ct. 1292, 1298 (1986) (emphasis in original).

The NJCRA is interpreted in the same manner. It precludes municipal liability absent a *Monell*-like showing of an official policy or practice. *See Southward v. Elizabeth Bd. of Educ.*, No. CV 15-3699 (KM), 2017 WL 111924, at *15 (D.N.J. Jan. 11, 2017); *see also Harvey v. Cty. of Hudson*, No. CV 14-3670 (KM), 2015 WL 9687862, at *11 (D.N.J. Nov. 25, 2015).

Plaintiff does not explicitly cite *Monell* in relation to the Union County Defendants in Count I or Count VII of the 2AC. Plaintiff does allude to *Monell* liability, however, in the "Facts" section of the 2AC (2AC at 9–11, 14), and specifically cites *Monell* against the Union County Defendants in his Opposition Brief. (Opposition Br. at 17–20.)

In order to establish *Monell* liability, a plaintiff must "(i) demonstrate the existence of an unlawful policy or custom; (ii) that resulted in a deprivation of the rights, privileges, or immunities secured by the Constitution or laws of the United States; and (iii) that the policy or custom was the proximate cause of the alleged deprivation." *Maldonado v. City of Passaic Bd. of Educ.*, No. CV1712245ESJAD, 2020 WL 289649, at *7 (D.N.J. Jan. 21, 2020) (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). A government policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Beck*, 89 F.3d at 971 (quoting *Bielevicz*, 915 F.2d 845, 850 (3d Cir. 1990)). In contrast, "a course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well-settled' as to virtually constitute law." *Id.* Additionally, "[o]nce a policy or custom is identified, a body may be liable only if it acted with deliberate indifference to the consequences of a policy that caused plaintiffs' harm . . . . Regarding deliberate indifference, something more culpable [must be shown] than a negligent failure to recognize [a] high risk of harm' to

9

plaintiffs." *Regan v. Upper Darby Twp.*, 363 F. App'x 917, 923 (3d Cir. 2010) (internal quotation marks and citations omitted).

Here, Plaintiff asserts that his detention for six days after UCPO dismissed the charges against him was attributable to an unlawful policy. *See* Opposition Br. at 17–21. Specifically, Plaintiff points to the language in the Report of the Prosecutor which instructs the prosecutor to "submit [the Report] to the assignment judge within 5 days of the administrative dismissal." (DE 69-3, Ex. E) Such a policy, he asserts, deprives individuals of their due process rights. (*See* Opposition Br. at 18.) The origin and source of authority for that 5-day deadline is not stated. Nevertheless, it appears to embody at least a practice or custom; UCPO acknowledges that it regularly observed the five-day time period to deliver the Report to the Assignment Judge. (*See* DE 69-3, Ex. J at 105:8–106:12). Thus, Plaintiff has met the first element of *Monell* liability in demonstrating the existence of a policy or custom followed by the Union County Defendants. Indeed, on one version of the facts, defendants exceeded the policy, in that the release occurred six days after the administrative dismissal.

### b. Deprivation of Constitutional right

Policy or no policy, however, plaintiff's claims fail for lack of evidence of deprivation of a constitutional right. Plaintiff alleges that his due process rights were violated as a result of the Union County Defendants' policy giving prosecutors, who have decided to dismiss charges, five days to provide the Report of the Prosecutor form to the Assignment Judge.

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The Due Process Clause guarantees not just "fair process," but also "heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 719–20, 117 S. Ct. 2258, 2267 (1997). Thus, due process claims can be either substantive or procedural. Here, Plaintiff alleges a substantive due

process claim against the Union County Defendants, which requires him to demonstrate that he was deprived of a protected property or liberty interest due to arbitrary or capricious government action. *See Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 590 (3d Cir. 1998). Government action is arbitrary or capricious if it is "not rationally related to a legitimate government interest or [was] in fact motivated by bias, bad faith or improper motive." *Id.* (internal citation and quotation marks omitted).

Here, Plaintiff fails to demonstrate that the six-day delay of his release deprived him of a protected liberty interest due to arbitrary or capricious actions of the Union County Defendants. In an analogous case, a sister court found that releasing an individual six days after the local police decided not to file criminal charges against him did not amount to a due process violation. *See Davison v. Kennedy*, No. 3:15-CV-01373, 2019 WL 1424558, at *8 (M.D. Pa. Mar. 29, 2019) (finding that defendants did not unreasonably delay plaintiff's release from jail since the six day period included a holiday and some interval was required for defendants to secure an order of release). The *Davison* court explicitly analogized to the delay between a grant of parole and the parolee's release. Such a release, *Davison* noted, should be "effected as swiftly as possible," since the parolee's Fourteenth Amendment liberty interests are implicated. Nevertheless, not every delay amounts to a constitutional violation:

> [I]t would be manifestly unfair for a court to hold a parole board liable for a constitutional violation whenever a parolee's release is not effected as swiftly as the parolee (or the court) might desire. The due process standard is one of reasonable dispatch, not of instantaneous action.

*Id.* (quoting *Burgess v. Roth*, 387 F. Supp. 1155, 1161-62 (E.D. Pa. 1975)). Indeed, the *Burgess* court noted that the "concept of due process does not involve the notion that the citizen is entitled to a forthwith process or insurance against all incidental hardship pending the execution of a reasonably expeditious and adequate process." *Burgess*, 387 F. Supp. at 1161 (quoting *United States v. Sosnowitz & Lotstein*, 50 F. Supp. 586, 589 (D. Conn. 1943) (internal quotation marks omitted)).

11

It does not seem to be disputed that Mr. Biaggi-Pacheco was detained for up to six days after the prosecutor decided to administratively dismiss the charges brought against him. The timeline was as follows:

- Wednesday, January 14, 2015: The Union County Superior Court received co-defendant Moises Monroig-Rosado's Pretrial Intervention Order. (DE 69-2, Ex. D.)

- Friday, January 16, 2015: The charges against Mr.Biaggi-Pacheco were administratively dismissed by the prosecutor pursuant to R. 3.25-1. (*Id.*, Ex. E.)

- Friday, January 16 or Saturday, January 17, 2015: The Report of the Prosecutor form, which provides the Union County prosecutor's reasons for administratively dismissing the charges against a defendant, was signed and dated by Mr. Albert Zabady, Esq., the prosecutor who handled Plaintiff's administrative dismissal.[6] (*Id.*) This form instructs prosecutors to provide the Report to the assignment judge "within 5 days of the administrative dismissal" in order to effect an individual's release.

- Monday, January 19, 2015: The court was closed in observance of the Dr. Martin Luther King, Jr. holiday. (*Id.*, Ex. G.)

- Unknown date: Report of Prosecutor Form furnished to the assignment judge.

- Thursday, January 22, 2015: Pursuant to order of assignment judge, Mr. Biaggi-Pacheco was released from jail. (*Id.*, Ex. C.)

It is conceded that the acting county prosecutor approved Plaintiff's administrative dismissal on January 16, 2015, at the earliest. Less clear is the date that the Report of the Prosecutor was provided to the assignment judge. It is clear, however, that the release occurred on January 22, 2015. The *total*

---

[6]    Plaintiff and Mr. Zabady acknowledge that the January 17, 2015 date was "more likely than not" incorrect, given that January 17 was a Saturday, and that Friday, January 16 was more likely the correct date. *See* DE 69-3, Ex. J at 71:13 – 73:19.

period between the prosecutor's administrative dismissal decision and Mr. Biaggi-Pacheco's release from custody, then, was six days.

The most plaintiff-friendly interpretation of this record would be that the matter was in the hands of the prosecutor for six days (*i.e.,* that the Report was transmitted to the judge on Day 6, and the judge immediately signed the order). Assuming that to be the case, the ECPO could be found to have exceeded the five-day deadline by one day. I cannot find, however, that this local policy, or even a one-day violation of it, would rise to the level of a due process violation. The parties have not cited any case establishing such a five-day period as a constitutional imperative. As stated above, "the due process standard is one of reasonable dispatch." *Davison*, 2019 WL 1424558, at *8. That standard, I find, was met. The court was closed for the three-day holiday weekend, and the Union County Defendants obtained Plaintiff's release by court order within three days thereafter. Whether or not they acted with maximum efficiency, the time period is not an unreasonable one to accomplish the requisite paperwork, obtain the necessary court order, and implement the release of an incarcerated individual.

As noted above, liability may be found if a government body acted, not merely negligently, but "with deliberate indifference to the consequences of a policy that caused plaintiffs' harm." *Regan*, 363 F. App'x at 923 (citing *Williams v. Borough of West Chester*, 891, F.2d 458, 467 n.14 (3d Cir. 1989); *Black v. Ind. Area Sch. Dist.*, 985 F.2d 707, 712–13 (3d Cir. 1993)). The record here does not demonstrate that the Union County Defendants acted with deliberate indifference towards Plaintiff. Mr. Zabady testified without contradiction that every Thursday or Friday he received a box of files of active cases from the prior week. *See* DE 69-3, Ex. J at 58:12–25. Each file contained a Screening Sheet, a form which includes the name(s) of the defendant(s), a file number, the city from which the case originated, and an indication of whether there was an indictment, downgrade, or dismissal of charges. *Id.* For the cases which, like Plaintiff's, were administratively dismissed, Mr. Zabady would provide the

13

reason for the dismissal on the screening sheet and then would provide the sheet to his secretary. The secretary would then create an "administrative dismissal form" for Mr. Zabady to review and sign. *Id.* at 60:16–63:14; *see also* DE 69-3, Ex. E. The secretary would then draft a letter to the court, which Mr. Zabady would review and sign, and the letter would be delivered to the court for the review of the assignment judge. *Id.* Mr. Zabady believed that the criminal clerk for the assignment judge would review the letters, and if the court accepted the reason for the dismissal, would change the defendant's bail status to "Release on Own Recognizance." A copy of the letter, with the changed bail status, would then be sent to the jail. *Id.* The jail would then check to see if the individual had other pending cases, and if not, would release the individual. *Id.*

As noted in *Davison,* the prisoner's release "required not only action by the defendants and their supervisors, but also an order by the county court effecting his release." 2019 WL 1424558, at *8 (citing *Evans v. Community Educ. Ctrs., Inc.*, Civ. No. 13-1642, 2015 WL 5334237, at *2 (E.D. Pa. Sept. 11, 2015) (noting that "only a court has authority to release individuals from prison")). Care must be taken to ensure that dismissals of charges are proper and that a person's release from jail is duly approved by the court. Given the multiple steps involved, it cannot be said that the Union County Defendants unreasonably delayed Plaintiff's release, or were acting with deliberate indifference, in a manner that rose to the level of a Constitutional violation.

The Third Circuit held in *Regan v. Upper Darby Tp.* that a five day delay in releasing that plaintiff from prison did not bespeak deliberate indifference. 363 F. App'x at 924 (also noting that part of the delay was attributable to the Christmas holiday). I cannot find that this delay, at least half of it attributable to the holiday weekend, created a constitutional violation. And there is no independent evidence of animus or deliberate indifference to the plaintiff or his needs.

Plaintiff has not met his burden on summary judgment to adduce evidence sufficient to raise a triable issue as to a due process violation under 42 U.S.C. § 1983. I will therefore grant the Union County Defendants' motion for summary judgment on Counts I and VII of the 2AC.[7]

### c. Plainfield Police Division

The Plainfield City Police Division appears to remain as a named defendant. I noted in my prior opinions that the City of Plainfield Police Division is "not an independent entity with the capacity to be sued." *Biaggi-Pacheco v. City of Plainfield*, No. CV163511KMJBC, 2019 WL 413543, at *6 n.9 (D.N.J. Jan. 31, 2019), *Biaggi-Pacheco v. City of Plainfield*, No. CV 16-3511 (KM), 2017 WL 401946, at *2 n.2 (D.N.J. Jan. 30, 2017); *see also* N.J. Stat. Ann. § 40A: 14–118 (municipal police department is "an executive and enforcement function of municipal government"). As a result, I will dismiss all counts against the City of Plainfield Police Division *sua sponte*. I add that the Plaintiff has already settled and dismissed his claims against the properly named defendant, the City of Plainfield.

---

[7] I do not reach other grounds raised by the Union County Defendants, including sovereign immunity under the Eleventh Amendment. That issue would depend on the somewhat unclear issue of whether a delay in obtaining a court order of release implicated a prosecutorial or administrative function. *See Ong v. Superior Court of Hudson Cty.*, No. CV1606777KMJBC, 2018 WL 324722, at *5 (D.N.J. Jan. 8, 2018) (citing cases). *Cf. Fogle v. Sokol*, No. 19-1066, 2020 WL 1921611 (3d Cir. Apr. 20, 2020) (requiring, for purposes of absolute prosecutorial immunity, that the acts sued upon be broken down and analyzed functionally to determine whether they involved the core functions of a prosecutor).

## V.      Conclusion

For the reasons set forth above, I will grant summary judgment in favor of the Union County Defendants on Counts I and VII of the Second Amended Complaint and will dismiss all claims against the City of Plainfield Police Division.  An appropriate order follows.

Dated: April 29, 2020

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**

16